JONES DAY
Christopher Lovrien (SBN 230546)
Kelsey S. Bryan (SBN 307577)
cjlovrien@jonesday.com
kbryan@jonesday.com
555 South Flower Street, 50th Floor
Los Angeles, CA  90071.2452
Telephone:  +1.213.489.3939

JONES DAY
Nathaniel P. Garrett (SBN 248211)
ngarrett@jonesday.com
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:  +1.415.626.3939

JONES DAY
Traci L. Lovitt (*pro hac vice forthcoming*)
tlovitt@jonesday.com
250 Vesey Street
New York, NY 10281.1047
Telephone:  +1.212.326.3939

Attorneys for Defendants
CHEVRON U.S.A. INC. and CHEVRON CORPORATION

(Additional information continued on following page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **DANIEL COFFEY, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHEVRON U.S.A. INC.; CHEVRON CORPORATION; and DOES 1-10,**<br><br>**Defendants.** | **Case No. 2:25-CV-09699-MWC-BFM**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE CLASS ACTION COMPLAINT**<br><br>Hearing Date:  May 15, 2026<br>Time:  1:30 p.m.<br>Dept:  6A<br>Judge: Hon. Michelle Williams Court<br>Date Action Filed: October 10, 2025 |

MCGUIREWOODS LLP
Shannon M. Kasley (*pro hac vice forthcoming*)
skasley@mcguirewoods.com
888 16th Street N.W., Suite 500
Washington, DC 20006
Telephone: +1.202.857.1700

MCGUIREWOODS LLP
Nicholas J. Hoffman (SBN 284472)
nhoffman@mcguirewoods.com
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071-3103
Telephone: +1.213.457.9855

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendants Chevron U.S.A. Inc. and Chevron Corporation (collectively, "Chevron"), hereby move to dismiss Plaintiff Daniel Coffey's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim upon which relief may be granted. Chevron also moves to strike Plaintiff's class allegations pursuant to Federal Rule of Civil Procedure 12(f) on the grounds that the Complaint defines an impermissible fail-safe class and that common issues cannot predominate under Federal Rule of Civil Procedure 23(b)(3). The motion is set for hearing on Friday, May 15, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 6A of the United States District Court for the Central District of California, located at First Street U.S. Courthouse, 350 W. 1st Street, Suite 4311, Los Angeles, California, 90012.

Chevron's Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and exhibit thereto, the pleadings and papers on file herein, and such other argument and evidence as may be presented at the hearing on the Motion.

This Motion is made following the parties' meet and confer regarding Chevron's arguments on March 16, 2026 and April 3, 2026. During that meeting, Chevron informed Plaintiff of the bases for dismissal laid out in the instant Motion.

Dated:      April 10, 2026                    JONES DAY

                                              By: */s/ Christopher Lovrien*
                                              _____

                                              Christopher Lovrien
                                              Attorneys for Defendants
                                              CHEVRON U.S.A. INC. and
                                              CHEVRON CORPORATION

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................... 3

LEGAL STANDARD.......................................................................................... 5

ARGUMENT ...................................................................................................... 6

I.    THE COMPLAINT FAILS TO STATE A VALID CLAIM. ......................... 6

    A.    The Complaint does not state a plausible negligence claim. .................. 6

        1.    Plaintiff's negligence per se claim is not a standalone cause of action and the statutes invoked provide no private right of action. ................. 6

        2.    Plaintiff does not plausibly allege negligence. ................................. 7

    B.    The Complaint does not plausibly allege that oil refining is an ultrahazardous activity. ........................................................................ 8

    C.    Plaintiff fails to state a valid claim for trespass. ..................................... 11

    D.    Plaintiff fails to state a claim for nuisance. ............................................ 12

        1.    The Complaint does not allege interference with Plaintiff's land. .................... 12

        2.    Plaintiff does not allege damage different in kind from the general public......... 13

    E.    Plaintiff's medical monitoring claim fails.............................................. 14

    F.    Plaintiff fails to state a claim for restitution. ......................................... 16

II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES........................................................................... 17

III.    IF ANY PORTION OF THE COMPLAINT IS ALLOWED TO PROCEED, THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS. ....................... 18

CONCLUSION .................................................................................................. 22

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

# TABLE OF AUTHORITIES

**Page**

Cases

*Adams v. MHC Colony Park, L.P.*,
224 Cal. App. 4th 601 (2014)...............................................................12

*Alonso v. Hills*,
95 Cal. App. 2d 778 (1950).....................................................................9

*Anderson v. Farmland Indus., Inc.*,
136 F. Supp. 2d 1192 (D. Kan. 2001).............................................10, 11

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................5

*Austin v. Atlina*,
2021 WL 6200679 (N.D. Cal. Dec. 22, 2021)........................................6

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024).....................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................7

*Bouncing Angels, Inc. v. Burlington Ins. Co.*,
2017 WL 1294004 (C.D. Cal. Mar. 20, 2017).......................................17

*Brooks v. Greystar Real Est. Partners, LLC*,
2025 WL 2258583 (S.D. Cal. Aug. 7, 2025)........................................19

*Brown v. Food for Life Baking Co.*,
658 F. Supp. 3d 732 (N.D. Cal. 2023)..................................................18

*Brown v. Petrolane, Inc.*,
102 Cal. App. 3d 720 (1980)...........................................................12, 13

*Campos v. City of Merced*,
709 F. Supp. 2d 944 (E.D. Cal. 2010)....................................................6

# TABLE OF AUTHORITIES

**Page**

*Carmichael v. Cafe Sevilla of Riverside, Inc.*,
108 Cal. App. 5th 292 (2025)..................................................................................10

*Clarke v. Pac. Gas & Elec. Co.*,
501 F. Supp. 3d 774 (N.D. Cal. 2020) .............................................................10, 11

*Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*,
2004 WL 2600455 (N.D. Cal. Nov. 15, 2004) .......................................................12

*Dent v. Nat'l Football League*, 968 F.3d 1126 (9th Cir. 2020) .................................6

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ...............................................................................16

*Edwards v. Post Transp. Co.*,
228 Cal. App. 3d 980 (1991)................................................................................9, 10

*Erickson v. Pardus*, 551 U.S. 89 (2007) ....................................................................5

*Fagan v. Superior Ref. Co. LLC*,
471 F. Supp. 3d 888 (W.D. Wis. 2020) ..................................................................10

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993)..............................................................................5, 18

*Goldstein v. ExxonMobil Corp.*,
2019 WL 2603967 (C.D. Cal. Apr. 1, 2019) ..........................................................22

*Gonzalez v. Am. Honda Motor Co.*,
720 F. Supp. 3d 833 (C.D. Cal. 2024) ....................................................................17

*Grace v. Apple, Inc.*,
2019 WL 3944988 (N.D. Cal. Aug. 21, 2019) ........................................................12

*Gutzalenko v. City of Richmond*,
723 F. Supp. 3d 748 (N.D. Cal. 2024) ......................................................................5

*Hall v. Amoco Oil Co.*,
617 F. Supp. 111 (S.D. Tex. 1984) ..........................................................................10

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

# TABLE OF AUTHORITIES

**Page**

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) ...............................................................16

*Horowitz v. Stewart Title Guar. Co.*,
2018 WL 6729630 (D. Haw. Dec. 21, 2018)...........................................8

*In re Burbank Env't Litig.*,
42 F. Supp. 2d 976 (C.D. Cal. 1998) .....................................................10

*In re Google Generative AI Copyright Litig.*,
2025 WL 1159998 (N.D. Cal. Apr. 21, 2025) .........................................19

*Koll-Irvine Ctr. Prop. Owners Assn. v. Cnty. of Orange*,
24 Cal. App. 4th 1036 (1994)..................................................................13

*Lautemann v. Bird Rides, Inc.*,
2019 WL 3037934 (C.D. Cal. May 31, 2019) .......................................22

*Leon v. Loandepot.com, LLC*,
2025 WL 2632396 (C.D. Cal. Aug. 22, 2025)..................................18, 19

*Leyva v. Garcia*,
20 Cal. App. 5th 1095 (2018)....................................................................7

*Lockheed Martin Corp. v. Superior Ct.*,
29 Cal. 4th 1096 (2003) ....................................................................14, 15

*Los Angeles Unified Sch. Dist. v. S&W Atlas Iron & Metal Co.*,
506 F. Supp. 3d 1018 (C.D. Cal. 2020) .................................................18

*Lueras v. BAC Home Loans Servicing, LP*,
221 Cal. App. 4th 49 (2013).....................................................................7

*Malan v. Martinez Ref. Co. LLC*,
2025 WL 2780822 (N.D. Cal. Sept. 30, 2025) ......................................21

*McBride v. Smith*,
18 Cal. App. 5th 1160 (2018)..................................................................11

*Munoz v. MacMillan*,
195 Cal. App. 4th  648 (2011)..................................................................16

- v -

# TABLE OF AUTHORITIES

**Page**

*Navarro v. ExxonMobil Corp.*,
2022 WL 22248790 (C.D. Cal. July 5, 2022)........................................................21

*Nichols v. eHealthInsurance Servs., Inc.*,
2025 WL 689721 (N.D. Cal. Mar. 3, 2025)...........................................................19

*Noe v. Superior Ct.*,
237 Cal. App. 4th 316 (2015)..................................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)..................................................................18, 19, 20

*Pajak v. Rohm & Haas Co.*,
387 F. Supp. 3d 138 (D. Mass. 2019) ..................................................................7, 8

*Palmisano v. Olin Corp.*,
2005 WL 6777560 (N.D. Cal. June 24, 2005) ......................................................11

*Pierce v. Pac. Gas & Elec. Co.*,
166 Cal. App. 3d 68 (1985)...................................................................................9

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965 (1993) .....................................................................................14, 15

*Ringler v. J.M. Smucker Co.*,
783 F. Supp. 3d 1229 (C.D. Cal. 2025) ................................................................18

*Riva v. Pepsico, Inc.*,
82 F. Supp. 3d 1045 (N.D. Cal. 2015) .............................................................15, 16

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016)...............................................................................18

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014)................................................................................16

*San Diego Gas & Electric Co. v. Superior Court*,
13 Cal. 4th 893 (1996) ..........................................................................................12

*Smith v. Lockheed Propulsion Co.*,
247 Cal. App. 2d 774 (1967)..............................................................................8, 9

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

# TABLE OF AUTHORITIES

**Page**

*Solano v. Vistra Corp.*,
2026 WL 60063 (N.D. Cal. Jan. 7, 2026) ..................................................14, 15, 16

*Steering Comm. v. Exxon Mobil Corp.*,
461 F.3d 598 (5th Cir. 2006)...................................................................................22

*Tinnin v. Sutter Valley Med. Found.*,
647 F. Supp. 3d 864 (E.D. Cal. 2022)....................................................................19

*United States v. S. California Edison Co.*,
300 F. Supp. 2d 964 (E.D. Cal. 2004).......................................................................9

*Venuto v. Owens-Corning Fiberglas Corp.*,
22 Cal. App. 3d 116 (1971)....................................................................................13

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021)...................................................................................8

*White v. Ultramar, Inc.*,
21 Cal. 4th 563 (1999) ............................................................................................17

*Whittlestone, Inc. v. Handi–Craft Co.*,
618 F.3d 970 (9th Cir. 2010)...................................................................................18

*Wilson v. Interlake Steel Co.*,
32 Cal. 3d 229 (1982)..............................................................................................11

*Xavier v. Philip Morris USA Inc.*,
2010 WL 3956860 (N.D. Cal. Oct. 8, 2010)...........................................................14

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018) ......................................................................6

**Statutes**

Cal. Civ. Code § 3294.............................................................................................17

Cal. Civ. Code § 3493.............................................................................................13

Cal. Health & Safety Code § 41700 .........................................................................6

Cal. Health & Safety Code § 42403 .........................................................................6

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

# **TABLE OF AUTHORITIES**

**Page**

Cal. Health & Safety Code § 42450 ......................................................................6

Cal. Labor Code § 142 ..........................................................................................6

Regulations

Cal. Code Regs. tit. 8, § 5189 ...............................................................................6

Rules

Fed. R. Civ. P. 12 ...............................................................................................1, 5

Fed. R. Civ. P. 8 ...................................................................................................7

Other Authorities

Restatement (Second) of Torts § 520 (1977) ....................................................8, 11

**INTRODUCTION[1]**

A fire at an industrial facility is not, standing alone, evidence of negligence, and speculation about what an investigation "may reveal" cannot substitute for factual allegations plausibly stating a claim. That is all Plaintiff Daniel Coffey's Complaint offers: conjecture, speculation, theory, and hope—hope that Plaintiff can find something in discovery to support his narrative.

This action arises from a fire at the Chevron El Segundo Refinery on the evening of October 2, 2025. The Complaint concedes that the fire was controlled by the following morning, that Chevron promptly accounted for all personnel, and that its operations resumed within days. The Complaint further acknowledges that the cause of the fire is under investigation and that air monitoring showed no dangerous concentrations of harmful substances. Unable to allege actual facts, Plaintiff instead speculates that "toxic materials *may* have risen above the monitor height" and that laboratory analysis of samples is "*expected* to" reveal contamination. This is precisely the type of conclusory pleading that Rule 12(b)(6) is designed to weed out.

Unsurprisingly given the lack of factual allegation, each of Plaintiff's seven causes of action fails as a matter of law. His negligence claims are nothing more than formulaic recitations of the elements, alleging in boilerplate fashion that Chevron failed to "properly inspect," "maintain," and "replace" equipment— without identifying which equipment failed, which protocol was violated, or how any purported deficiency caused the fire. His "negligence per se" claim fares no better: it is not a standalone cause of action under California law, and the statutes

---

[1] Chevron Corporation has filed a Motion for Recusal in the related case of *Coleman v. Chevron Corporation, et al.*, No. 2:25-cv-10740 (C.D. Cal. Jan. 16, 2026), Dkt. 28, which remains pending before the Court. Chevron files this Motion to Dismiss to preserve its responsive pleading deadlines and respectfully submits that the Court should defer ruling on the instant motion until the Motion for Recusal has been resolved.

he invokes provide no private right of action.

Plaintiff's strict liability claim cannot survive the black-letter rule—confirmed by California courts addressing Chevron's refinery operations—that oil refining is not an ultrahazardous activity. Refineries are commonplace facilities that can be operated safely by the exercise of reasonable care. Plaintiff's own allegations that the fire was preventable through proper maintenance demonstrate that fact.

The trespass and nuisance claims fail because Plaintiff alleges no invasion of—or interference with—his real property. The Complaint's only specific allegations concerning Plaintiff are limited to damage to his car and boat; damage to personal property cannot sustain either claim.

His medical monitoring claim is equally deficient: medical monitoring is not a standalone cause of action. Even if it were, Plaintiff identifies no specific disease he is at risk of developing, no threshold exposure level, and no facts establishing that his brief, unquantified exposure warrants decades of medical surveillance.

And his unjust enrichment claim fails because unjust enrichment is not a standalone cause of action in California, and Plaintiff alleges no benefit he conferred upon Chevron that equity would require to be returned.

Separately, the class allegations should be stricken. Plaintiff defines the class to include only those who "suffered" injury—a textbook fail-safe definition that the Ninth Circuit has held improper as a matter of law. And even if recast, individualized questions of exposure, causation, and harm would overwhelm any common issues, as courts addressing analogous refinery-emissions claims have consistently held.

In short, Plaintiff has filed a lawsuit based on what he hopes to find rather than what he can allege. The Court should dismiss the Complaint with prejudice.

If not dismissed, this case should at least be stayed. Plaintiff's claims are duplicative of a related action already pending before this Court. In *Coleman v.*

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

*Chevron Corporation*, Case No. 2:25-cv-10740-MWC-BFM, the plaintiff asserts claims arising from the same October 2, 2025 fire at Chevron's El Segundo Refinery, asserts essentially the same state-law tort claims (negligence, strict liability, nuisance, and trespass), and seeks relief on behalf of an overlapping putative class. It is highly inefficient and inappropriate to have two competing, overlapping putative class matters proceeding simultaneously before this Court. The Court should decline to entertain duplicative complaints and stay this action—the later-in-time action—if it is not dismissed outright.

### FACTUAL ALLEGATIONS

This action arises from events on the evening of October 2, 2025, at the Chevron El Segundo Refinery. Plaintiff Daniel Coffey, a resident of Redondo Beach, brings this putative class action alleging negligence, strict liability, nuisance, trespass, negligence per se, and seeking equitable relief for medical monitoring and restitution. Dkt. No. 1 ("Compl.") ¶ 1. Plaintiff alleges that Chevron U.S.A. Inc. owns and/or operates the El Segundo refinery and that Chevron Corporation exercised ownership, oversight, control, and/or management with respect to refinery operations at relevant times. *Id.* ¶¶ 8-9.[2]

Plaintiff alleges that at approximately 9:30 p.m. on October 2, 2025, an explosion occurred at the Chevron El Segundo Refinery in or near the Isomax Unit. Compl. ¶ 14. While the Complaint reports that witnesses observed a fireball and flames, it does not identify a definitive cause for the event. *Id.* ¶¶ 14, 18. The Complaint expressly concedes that "[t]he exact cause of the explosion remains under investigation." *Id.* ¶ 18. The fire was brought under control by October 3, 2025, and Chevron restarted operations at El Segundo within days. *Id.* ¶¶ 15, 19.

The Complaint acknowledges ongoing investigations by Chevron and

---

[2] The El Segundo refinery is operated by Chevron U.S.A. Inc., and not by Chevron Corporation, but for the purposes of this motion to dismiss only, Chevron accepts Plaintiff's allegations as true.

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

Cal/OSHA to determine the incident's cause, conceding that investigators were still examining turbine components and safety systems as of mid-October 2025.  Compl. ¶ 7.  Despite this acknowledged uncertainty, the Complaint speculates that "any root-cause analysis of the Isomax failure will reveal equipment or process deficiencies that Chevron knew or should have known about."  *Id.* ¶ 19.

Plaintiff alleges that the fire "emitted thick black smoke and combustion byproducts into the air, raising immediate concerns about air quality."  Compl. ¶ 24.  Yet the Complaint acknowledges—repeatedly—that actual air monitoring data does not support Plaintiff's theory of widespread harmful exposure.  The Complaint concedes that Chevron's mobile air monitoring "claimed that no dangerous concentrations were detected" and that "fenceline monitors reported no regulatory exceedances."  Compl. ¶ 29.  Plaintiff does not dispute these representations or allege they are false.  Instead, Plaintiff speculates that "toxic materials *may* have risen above the monitor height and descended further downwind, escaping detection but still affecting the community."  *Id.* ¶¶ 24, 29 (emphasis added).

The Complaint alleges that volatile organic compounds "spiked to about 300 parts per billion near the refinery fence."  Compl. ¶ 25.  Critically, however, the Complaint fails to allege this exceeds any applicable regulatory standard, fails to allege that any such concentration was near Plaintiff's residence, and fails to connect these readings to Plaintiff's claimed injuries.

Plaintiff's dispersion theory also rests on conjecture.  The Complaint alleges that pollution "could have" traveled as far as ten miles from the refinery—not that it actually did so.  Compl. ¶ 26.  It alleges that laboratory analysis of samples from the Redondo Beach marina is "expected to" show hydrocarbon oils and combustion byproducts—not that any such analysis has actually been completed.  *Id.*  The Complaint alleges that initial offshore winds carried the plume seaward, while a shift to onshore sea-breeze conditions on October 3 "returned airborne pollutants more than six miles south into Redondo Beach."  *Id.* ¶ 55.  But the Complaint

pleads no facts establishing that pollutants actually reached Plaintiff's property in concentrations sufficient to cause injury.

Most significantly, the Complaint acknowledges that "no long-term injuries have yet been confirmed." Compl. ¶ 28. Plaintiff alleges only that he experienced coughing, wheezing, chest tightness, and headaches for which he sought "or will seek" medical care and relief—suggesting that he may not have received any medical treatment at all. *Id.* ¶ 7. The pleading further alleges that Plaintiff's car and boat incurred property contamination from soot, ash, and oily fallout, though the complaint does not allege any testing or repair findings specific to Plaintiff's personal property. *Id.* ¶¶ 7, 26.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), this Court can dismiss the Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (citation modified).

The Court also "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An allegation is "immaterial" if it has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted). "Impertinent" allegations include those "that do not pertain to, and are not necessary to resolve, the issues in question . . . ." *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal. 2024).

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

**ARGUMENT**

**I.   THE COMPLAINT FAILS TO STATE A VALID CLAIM.**

**A.   The Complaint does not state a plausible negligence claim.**

Plaintiff's First Claim (negligence) and Fifth Claim (negligence per se) are both legally deficient.

**1.   Plaintiff's negligence per se claim is not a standalone cause of action and the statutes invoked provide no private right of action.**

Plaintiff's negligence per se claim fails for two independent reasons.  First, "negligence per se is not a separate cause of action." *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (citation modified).  Negligence per se is "an evidentiary vehicle only," and the standalone claim should be dismissed. *Campos v. City of Merced*, 709 F. Supp. 2d 944, 966 (E.D. Cal. 2010).

Second, even as an evidentiary doctrine, negligence per se requires that "'Plaintiffs must demonstrate that the statute allegedly violated allows for a private cause of action.'" *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912 (N.D. Cal. 2024) (citation omitted).  If "there is no private right of action" under the statute invoked, then plaintiffs cannot bootstrap that statute via a negligence per se theory. *Austin v. Atlina*, 2021 WL 6200679, at *3 (N.D. Cal. Dec. 22, 2021).

Plaintiff invokes Health and Safety Code section 41700 (Compl. ¶ 88), but that statute may only be enforced by a local air district board through an abatement action (Cal. Health & Safety Code § 42450), or in a government action for civil penalties (*id.* § 42403).  A statute that contemplates only government enforcement "confers no private right of action." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 855 (N.D. Cal. 2018).

Plaintiff also invokes Title 8, California Code of Regulations section 5189, the Process Safety Management regulation.  Compl. ¶ 88.  But that regulation is enforced by the Department of Industrial Relations (Cal. Labor Code § 142), and private plaintiffs have no private right of action "when regulatory statutes provide a

comprehensive scheme for enforcement by an administrative agency." *Noe v. Superior Ct.*, 237 Cal. App. 4th 316, 337 (2015).

### 2. Plaintiff does not plausibly allege negligence.

Plaintiff's general negligence claim fares no better. To state a negligence claim, "a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013) (citing *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012)). The mere fact that a fire occurs is insufficient to raise an inference of negligence; the plaintiff must plausibly allege "that the negligence of [the defendant] was the proximate cause of the fire." *Leyva v. Garcia*, 20 Cal. App. 5th 1095, 1104 (2018) (quoting *Bartholomai v. Owl Drug Co.*, 42 Cal. App. 2d 38, 42 (1940)).

The Complaint alleges, on information and belief, that the fire "was caused by the unsafe, non-compliant, or otherwise improper operation of equipment and handling of hazardous materials, or other acts and omissions by Defendant," but fails to identify any specific equipment failure, operational deviation, or causal mechanism. Compl. ¶ 53. These allegations amount to nothing more than a "formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint's catalog of alleged failures—failing to "properly inspect," "maintain," and "replace" equipment, allowing "unsafe operating conditions to persist," and violating various safety standards—does not specify which equipment failed, which inspection protocol was violated, which regulatory standard was breached, or how any purported failure proximately caused the fire. Compl. ¶ 53.

Such allegations are insufficient under Rule 8. For example, in *Pajak v. Rohm & Haas Co.*, 387 F. Supp. 3d 138, 142 (D. Mass. 2019), the plaintiff asserted a negligence claim after suffering burns and a loss of vision due to an industrial

- 7 -

explosion.  The plaintiff alleged that the defendants failed to adequately maintain the vessel containing the chemical that caused the explosion, but the complaint was "completely devoid of any factual assertions specifying how [the Defendants] breached any of their purported duties of care (such as how they insufficiently maintained the container or working environment or how the design of or training as to the trimethylaluminum reclamation process was inadequate)." *Id.* at 148. "Such conclusory statements," the court reasoned, merely "restate the alleged duty of care in the negative" and are insufficient to state a claim.  *Id.*

The same deficiency plagues Plaintiff's Complaint.  The Complaint "do[es] little more than recite the elements" of negligence and thus does not cross the line from possibility to plausibility.  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021); *see also Horowitz v. Stewart Title Guar. Co.*, 2018 WL 6729630, at *6 (D. Haw. Dec. 21, 2018) (negligence claims require "factual allegations" that raise more than a "sheer possibility" of liability).

### B.  The Complaint does not plausibly allege that oil refining is an ultrahazardous activity.

Plaintiff's strict liability claim for "abnormally dangerous activity" fails as a matter of law.  Whether an activity is "abnormally dangerous" or "ultrahazardous" is a question of law for the Court, not a fact question for the jury.  *See Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 785 (1967) (citing cases). California courts apply the Restatement (Second) of Torts section 520's multifactor test to determine whether an activity is ultrahazardous, examining the:  "(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes."  *Edwards v. Post Transp. Co.*, 228 Cal.

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

App. 3d 980, 984-85 (1991) (citation modified).  "[T]he several factors are to be considered together; establishment of one factor alone is usually not sufficient to categorize an activity; several factors will ordinarily be required."  *Id.*

California courts have held as a matter of law that operating a refinery, which is "commonplace" in California, is not an ultrahazardous activity.  In 2018, the Superior Court of Contra Costa County rejected the same claim against Chevron's Richmond refinery following an August 2012 fire.  Req. for Judicial Notice Ex. A. The court found that "the normal operation of the refinery" does not "pose[] a high risk of harm" and that harm can "be avoided through the exercise of reasonable care."  *Id.* at 15-16.  Oil refineries "are commonplace," with more than seventeen operating in California alone, and they provide substantial community value through employment and taxes.  *Id.* at 16-17.

The Contra Costa Superior Court's conclusion follows a long line of California precedent reserving strict liability for inherently dangerous activities, such as blasting (*Alonso v. Hills*, 95 Cal. App. 2d 778, 783 (1950)) and rocket motor testing (*Smith*, 247 Cal. App. 2d at 785), as opposed to widespread, commonplace, regulated industrial operations that can be conducted safely with reasonable care.  For example, courts applying California law have rejected the notion that operating energy facilities constitutes an ultrahazardous activity.  *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 991 (E.D. Cal. 2004) ("the activities of power plants are not classified as ultrahazardous").  The doctrine of ultrahazardous activity has been limited "to encompass only activities which are neither commonplace nor customary," which does not describe the operation "of power plants."  *Id.* at 991 (citation omitted); *see also Pierce v. Pac. Gas & Elec. Co.*, 166 Cal. App. 3d 68, 85 (1985) (finding maintenance of high-voltage power systems is not an ultrahazardous activity).  Likewise, routine industrial chemical operations do not qualify as ultrahazardous because "the actual risk of harm to people could be eliminated by the use of proper handling procedures."  *Edwards*,

228 Cal. App. 3d at 986; *see also In re Burbank Env't Litig.*, 42 F. Supp. 2d 976, 983 (C.D. Cal. 1998) ("the act of using solvents to clean metal parts in an industrial site was not an ultrahazardous activity" because "[t]hese chemicals are used widely as solvents").

And like the Contra Costa Superior Court, "[o]ther federal district and appellate courts have also declined to generalize operations at oil refineries as ultrahazardous in terms of strict liability." *See Fagan v. Superior Ref. Co. LLC*, 471 F. Supp. 3d 888, 894–95 (W.D. Wis. 2020) (citing cases). These courts recognize that oil refineries can be operated safely by "the exercise of reasonable care." *Anderson v. Farmland Indus., Inc.*, 136 F. Supp. 2d 1192, 1199 (D. Kan. 2001); *see also Hall v. Amoco Oil Co.*, 617 F. Supp. 111, 112 (S.D. Tex. 1984) ("the Court concludes that the operation of an oil refinery in an industrial community ... does not constitute an ultrahazardous activity"); *Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 791 (N.D. Cal. 2020) (dismissing strict liability claim and holding that operating a gas plant was not an ultrahazardous activity).

Plaintiff's own allegations "implicitly explain[] how" harm from oil refining "could have been avoided," thereby undermining his ultrahazardous activity claim. *Carmichael v. Cafe Sevilla of Riverside, Inc.*, 108 Cal. App. 5th 292, 300 (2025). The heart of Plaintiff's theory is that the refinery failed to maintain its equipment properly and the fire was completely preventable. Compl. ¶¶ 53-54. Plaintiff's allegations suggest that Chevron could eliminate risk if it replaced equipment or complied with safety standards. *Id.* ¶ 53. These allegations are fundamentally inconsistent with the claim that refineries cannot be safely operated through the exercise of reasonable care. As a consequence, factor (c) weighs against a finding of strict liability.

The remaining factors likewise weigh against strict liability. Refineries and comparable energy facilities are "commonplace," and Plaintiff pleads no facts suggesting the facility's location—contiguous to a sewage treatment plant and,

- 10 -

beyond that, a hazardous chemicals recycling center and the Los Angeles International Airport—is inappropriate to its industrial setting or that the social utility of producing critical fuels for the region is outweighed by the alleged fire risk. To the contrary, the Complaint concedes that "fuel production provides economic utility"—a value that section 520 requires the Court to weigh. Compl. ¶ 62. Courts have consistently refused to characterize oil refineries as ultrahazardous in light of the significant economic impact refineries have on their local communities. *See, e.g.*, *Anderson*, 136 F. Supp. 2d at 1201; RJN Ex. A at 17 (finding significant economic benefit due to refinery's employment of 3,500 people and tax proceeds). Accordingly, Plaintiff's strict liability claim should be dismissed. *See Clarke*, 501 F. Supp. 3d at 791 ("While the inquiry of whether an activity should be classified as ultrahazardous requires fact-specific analysis regarding the activity in question, strict liability claims are still subject to dismissal at the pleadings stage if they are not plausibly pleaded.").

### C. Plaintiff fails to state a valid claim for trespass.

Plaintiff's Fourth Claim for Relief, styled as "Trespass to Property," pleads neither trespass to real property nor trespass to chattels. Compl. ¶¶ 78-85.

For trespass to real property, California requires "an unauthorized and tangible entry on the land of another, which interfered with the plaintiff's exclusive possessory rights." *McBride v. Smith*, 18 Cal. App. 5th 1160, 1174 (2018). "All intangible intrusions, such as noise, odor, or light alone, are dealt with as nuisance cases, not trespass." *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 233 (1982). A trespass claim based on emissions requires "deposit[s] of particulate matter upon the plaintiffs' property or … actual physical damage thereto." *Id.*; *see also Palmisano v. Olin Corp.*, 2005 WL 6777560, at *12 (N.D. Cal. June 24, 2005) ("imperceptible substances must either (1) deposit particulate matter upon the plaintiffs' property or (2) cause actual physical damage thereto to constitute a trespass" (citation modified)).

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

Here, the Complaint does not plausibly allege an invasion of Plaintiff's land, let alone the deposit of particulate matter thereon. While the Complaint contains generalized class allegations regarding contamination of "homes," "buildings," "yards," and "residential properties" throughout the allegedly affected communities, the specific factual allegations concerning named Plaintiff Coffey himself are conspicuously limited to personal property damage. Compl. ¶ 83. The Complaint alleges only that Coffey "incurred property damage to his car and boat from soot/ash/oily fallout," without any mention of an invasion of his real property, such as his residence, yard, or land. *Id.* ¶ 7.

If Plaintiff intends to plead trespass to chattels, that claim fails for lack of intent. Under California law, trespass to chattels requires that "the defendant's interfering act must have been intentional." *Grace v. Apple, Inc.*, 2019 WL 3944988, at *7 (N.D. Cal. Aug. 21, 2019); *Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*, 2004 WL 2600455, at *3 (N.D. Cal. Nov. 15, 2004) ("It is clear that California law requires intent as an element of trespass to chattels."). Plaintiff does not—and cannot—allege that Chevron intended to cause a fire that interfered with his personal property.

### D. Plaintiff fails to state a claim for nuisance.

Plaintiff's third claim for nuisance fails whether characterized as public or private. Compl. ¶¶ 67-77.

#### 1. The Complaint does not allege interference with Plaintiff's land.

A private nuisance claim requires "a nontrespassory interference with the private use and enjoyment of land." *San Diego Gas & Electric Co. v. Superior Ct.*, 13 Cal. 4th 893, 937 (1996). "The essence of a private nuisance is an interference with the use and enjoyment of land and . . . without it, the fact of personal injury, or of interference with some purely personal right, is not enough for such a nuisance." *Brown v. Petrolane, Inc.*, 102 Cal. App. 3d 720, 726 (1980) (citation modified); *see also Adams v. MHC Colony Park, L.P.*, 224 Cal. App. 4th 601, 610 (2014) ("A

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

private nuisance cause of action requires the plaintiff to prove an injury specifically referable to the use and enjoyment of his or her land.").

The Complaint fails to allege that Plaintiff owns, leases, occupies, or controls any real property affected by the alleged nuisance. The only property damage Plaintiff specifically alleges is "property damage to his car and boat from soot/ash/oily fallout." Compl. ¶ 7. Damage to personal property—a car and a boat—cannot support a private nuisance claim.

Plaintiff also alleges that he "experienced respiratory symptoms (coughing, wheezing, chest tightness, headaches)." Compl. ¶ 7. These are quintessential personal injuries, untethered from any interference with the use and enjoyment of land, that cannot sustain a private nuisance claim. *Petrolane*, 102 Cal. App. 3d at 726.

### 2. Plaintiff does not allege damage different in kind from the general public.

Nor can Plaintiff pursue a claim for public nuisance. A private party can maintain an action based on a public nuisance "if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. "The damage suffered must be different in kind and not merely in degree from that suffered by other members of the public." *Koll-Irvine Ctr. Prop. Owners Assn. v. Cnty. of Orange,* 24 Cal. App. 4th 1036, 1040 (1994).

In *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116 (1971), the plaintiffs sued a fiberglass manufacturing company for public nuisance, alleging emissions aggravated their respiratory disorders. *Id.* at 121. The court affirmed dismissal because the plaintiffs failed to allege that their respiratory injuries were different in kind from those suffered by the public. *Id.* at 125.

Here too, Plaintiff's injuries are indistinguishable from those suffered by the broader community. The Complaint alleges the refinery fire "blanket[ed] nearby communities with toxic soot and chemical fallout," leaving "a community left

- 13 -

coughing, cleaning, and fearing for its health and property." Compl. ¶ 2. Plaintiff admits that other residents, "including but not limited to the Plaintiff, have reported oily soot and ash settling on cars, boats, and other property," and that "[s]ome residents, like Plaintiff, reported acute health symptoms," including "respiratory complaints." *Id.* ¶¶ 26, 28. Because the Complaint establishes that Plaintiff's alleged injuries—soot on his boat and car, and respiratory symptoms—are the same harms suffered by the broader community, his public nuisance claim fails as a matter of law.

### E.   Plaintiff's medical monitoring claim fails.

Plaintiff's Sixth Claim for Medical Monitoring fails for two independent reasons. First, and most fundamentally, medical monitoring is a remedy, not a "new tort." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1007 (1993); *see also Lockheed Martin Corp. v. Superior Ct.*, 29 Cal. 4th 1096, 1105 (2003)) (medical monitoring is "not a separate tort but simply an item of damages" available under traditional tort theories). Because it is not "a stand-alone claim," the medical monitoring cause of action must be dismissed. *Xavier v. Philip Morris USA Inc.*, 2010 WL 3956860, at *4 (N.D. Cal. Oct. 8, 2010) (granting motion to dismiss and finding standalone medical monitoring claim not cognizable under California law).

Second, even if medical monitoring were a standalone claim, Plaintiff's cause of action fails under the exacting standards established by California courts and recently applied in *Solano v. Vistra Corp.*, 2026 WL 60063 (N.D. Cal. Jan. 7, 2026). Under California law, a plaintiff seeking medical monitoring must demonstrate that "the need for future monitoring is a reasonably certain consequence of a plaintiff's toxic exposure and that the recommended monitoring is reasonable." *Potter*, 6 Cal. 4th at 1009. To meet this demanding standard, Plaintiff must plead facts addressing five specific factors: "(1) the significance and extent of the plaintiff's exposure to the chemicals; (2) the relative toxicity of the chemicals;

- 14 -

(3) the seriousness of the diseases for which plaintiff is at an increased risk; (4) the relative increase in the plaintiff's chances of developing a disease . . .; and (5) the clinical value of early detection and diagnosis." *Id.*

In *Solano*, residents alleged that "toxic substances, soot, and ash were deposited on their properties," following a five-day industrial fire. 2026 WL 60063, at \*7. Despite these allegations, the court dismissed the medical monitoring claims because the complaint did "not explicitly identify what disease(s) they are at risk of developing," "the seriousness of the risk," or "what threshold level of exposure creates the increased risk." *Id.* at \*7 (quoting *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1056-61 (N.D. Cal. 2015)).

The Complaint here suffers from the same—and in many respects more severe—pleading deficiencies. While the complaint summarily alleges that the refinery fire "released a complex mixture of toxic and carcinogenic substances" (Compl. ¶ 96), it never alleges the concentration or dose of any substance, the duration of exposure, the pathway by which Plaintiff was exposed, or any facts supporting a statistically significant increase in disease risk. These are not technical details that can be deferred to discovery. Plaintiffs must provide sufficient "context as to the significance and extent of exposure to make the necessary ultimate showing that 'the need for future monitoring is a reasonably certain consequence of [the] toxic exposure.'" *Riva*, 82 F. Supp. 3d at 1057 (quoting *Lockheed Martin*, 29 Cal. 4th at 1109). Plaintiff's bare recitation that he suffered "respiratory symptoms" (Compl. ¶ 7), falls far short of demonstrating significant toxic exposure warranting medical surveillance.

Furthermore, the Complaint fails to identify what diseases Plaintiff faces, what exposure threshold creates the risk, or what monitoring protocols would be appropriate – making only generalized references to "disease" without explaining how exposure to unquantified substances during a brief fire creates demonstrable risk of any particular condition. Compl. ¶ 98. As *Solano* instructs, plaintiffs must

- 15 -

"explicitly identify what disease(s) they are at risk of developing," and then "allege the seriousness of the risk, the clinical value of early detection and diagnosis, or 'what threshold level of exposure creates the increased risk.'" *Solano*, 2026 WL 60063, at *7 (citation omitted). Without such factual allegations, Plaintiff's medical monitoring claim amounts to nothing more than speculation that some unknown future harm might occur—precisely the kind of conjecture that federal courts reject. *Id.*; *Riva*, 82 F. Supp. 3d at 1062.

### F. Plaintiff fails to state a claim for restitution.

Plaintiff's Seventh Claim for Restitution/Unjust Enrichment should be dismissed because unjust enrichment is not a cause of action, and the Complaint fails to plausibly allege Chevron received a benefit at Plaintiff's expense.

The Complaint alleges that Chevron "derived substantial economic benefit through the operation of the Chevron El Segundo Refinery" and that equity "requires that Defendants disgorge and restore the monetary value of the benefits unjustly retained." Compl. ¶¶ 104, 106. But "in California, there is not a standalone cause of action for 'unjust enrichment." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("[u]njust enrichment is not a cause of action"). California recognizes only "a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). Under this doctrine, "restitution may be awarded where the defendant obtained a benefit *from the plaintiff* by fraud, duress, conversion, or similar conduct." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (emphasis added). In that instance, the defendant must "return a benefit" conferred by the plaintiff. *Munoz v. MacMillan*, 195 Cal. App. 4th 648, 661 (2011). Where the plaintiff has not "conferred a benefit upon Defendant," no restitution right exists. *Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 848 (C.D. Cal. 2024).

Here, Plaintiff alleges only that Chevron received economic benefit by

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

operating the refinery.  Compl. ¶ 104.  Plaintiff does not allege that *he* conferred any benefit on Chevron.  There is thus no benefit for Chevron to *return* to Plaintiff.

## II.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES.

Plaintiff's demand for punitive damages is equally deficient and should be dismissed.  *See* Compl. at 31.  Under California Civil Code section 3294(a), punitive damages require clear and convincing evidence that the defendant acted with oppression, fraud, or malice.  For corporate defendants, section 3294(b) imposes an additional, heightened requirement:  the alleged oppression, fraud, or malice must be committed, authorized, or ratified by an officer, director, or managing agent of the corporation, or the corporate officer, director, or managing agent must have advance knowledge of an agent's unfitness and employ the agent with conscious disregard of others' rights or safety.  This requirement limits "the class of employees whose exercise of discretion could result in a corporate employer's liability for punitive damages" to those with sufficient authority to justify holding the entire corporation accountable for punitive damages.  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 573 (1999).

Although malice may be averred generally, a complaint must still state a claim that is plausible on its face.  *Bouncing Angels, Inc. v. Burlington Ins. Co.*, 2017 WL 1294004, at *4 (C.D. Cal. Mar. 20, 2017).  To support punitive damages, Plaintiff must identify specific conduct by an identifiable individual who could reasonably be inferred to have decision-making power over corporate policy.  *Id.*

The Complaint contains only a formulaic demand for punitive damages based on Chevron's "willful, malicious, and conscious disregard of the health and safety of the surrounding community."  Compl. at 31.  It pleads no facts identifying any officer, director, or managing agent who engaged in, authorized, or ratified wrongful conduct.  Because Plaintiff has not alleged facts that satisfy the corporate-actor authorization or ratification requirement of section 3294(b), dismissal of the

punitive damages demand is warranted.  *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1249 (C.D. Cal. 2025); *Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732, 743 (N.D. Cal. 2023); *Los Angeles Unified Sch. Dist. v. S&W Atlas Iron & Metal Co., Inc.*, 506 F. Supp. 3d 1018, 1032 (C.D. Cal. 2020).

## III. IF ANY PORTION OF THE COMPLAINT IS ALLOWED TO PROCEED, THE COURT SHOULD STRIKE PLAINTIFF'S CLASS ALLEGATIONS.

Plaintiff's proposed class—"[a]ll persons who, between October 2-9, 2025, resided, owned, or occupied property within up to ten (10) miles of the Chevron Refinery and who suffered personal injury (including respiratory symptoms) and/or property contamination, loss of use/enjoyment, or economic loss caused by the October 2, 2025 explosion/fire and resulting emissions"—is facially defective and should be stricken.

A motion to strike serves "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc.,* 984 F.2d at 1527).  "[T]he Supreme Court and Ninth Circuit have both recognized that striking class allegations may be appropriate in certain cases."  *Leon v. Loandepot.com, LLC*, 2025 WL 2632396, at *2 (C.D. Cal. Aug. 22, 2025).  This case fits the bill:  the Ninth Circuit has confirmed that fail-safe classes are improper as a matter of law, and courts in this Circuit regularly strike such definitions at the outset.

A fail-safe class is one "defined to include only those individuals who were injured by the allegedly unlawful conduct," such that the membership turns on the merits of liability.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022); *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) ("defining the class to include only those individuals who were 'injured' by non-disclosure threatens to create a 'fail safe' class").  That is exactly what Plaintiff pleads:  individuals within

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

a 10-mile radius "who suffered personal injury … and/or property contamination, loss of use/enjoyment, or economic loss" are included.  Those who did not suffer personal injury, property intrusion, or economic damages are excluded.

Fail-safe classes are impermissible because they allow putative members either to win or, if they lose on the merits, to be defined out of the class and thus avoid the binding effect of an adverse judgment.  *Olean*, 31 F.4th at 669 n.14. Considering *Olean*'s guidance, numerous decisions within this Circuit have stricken fail-safe class definitions at the pleading stage, recognizing that such defects are purely legal and not curable through discovery.  *See, e.g.*, *Brooks v. Greystar Real Est. Partners, LLC*, 2025 WL 2258583, at *8 (S.D. Cal. Aug. 7, 2025); *In re Google Generative AI Copyright Litig.*, 2025 WL 1159998, at *3 (N.D. Cal. Apr. 21, 2025) ("Because Plaintiffs' fail-safe class definition is defective as a matter of law, it is appropriate to strike it at the pleading stage.") (citing cases); *Nichols v. eHealthInsurance Servs., Inc.*, 2025 WL 689721, at *5 (N.D. Cal. Mar. 3, 2025) (citing cases).[3]

Even if Plaintiff reconfigured the putative class, this action "could not possibly proceed on a classwide basis" because common issues will not predominate.  *Leon*, 2025 WL 2632396, at *2 (citing *Heredia v. Sunrise Senior Living LLC*, 2019 WL 5149854, at *6 (C.D. Cal. Mar. 4, 2019)).  A class action may be maintained only if "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  When individualized questions relate to the injury status of class

---

[3] Some district courts within the Ninth Circuit have suggested that a motion to strike is not the proper procedural mechanism for addressing a fail-safe class. *See Tinnin v. Sutter Valley Med. Found.*, 647 F. Supp. 3d 864, 874–75 (E.D. Cal. 2022).  But in *Olean*, the en banc Ninth Circuit held that fail-safe classes are improper as a matter of law.  31 F.4th at 669 n.14.  In light of that guidance, a motion to strike is a proper mechanism for addressing fail-safe classes.  *Google*, 2025 WL 1159998, at *3 n.2.

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

members, Rule 23(b)(3) "requires that the court determine whether individualized inquiries about such matters would predominate over common questions." *Olean*, 31 F.4th at 668.  The central question in this regard is whether injury "is capable of being established class-wide through common proof" (in which case a class may be certified), or whether individual trials will be necessary "to determine the common question of whether class members were injured" (in which case it may not).  *Id.* at 669 n.13 & 676.

The Complaint confirms that exposure and impact varied dramatically. Plaintiff alleges pollution "could have traveled as far as 10 miles from the Chevron Refinery," but alleges only that "Residents of Redondo Beach" have "reported" soot settling on property.  Compl. ¶ 26.  The Complaint further admits that "initial offshore winds carried the plume seaward" before a "shift to onshore sea-breeze conditions on October 3 returned airborne pollutants" to areas like Redondo Beach. *Id.* ¶ 55.  These allegations confirm what courts have long recognized:  in transient emissions cases, exposure and harm necessarily vary person-by-person and parcel-by-parcel based on distance and orientation to the source, the time and duration of any exposure, whether a resident was indoors or outdoors, the unique characteristics of each home or business, and idiosyncratic health conditions—all of which preclude common proof of impact and injury.

The Complaint's allegations regarding health impacts confirm these individualized inquiries.  Plaintiff alleges that he personally "experienced respiratory symptoms (coughing, wheezing, chest tightness, headaches)."  Compl. ¶ 7. But the Complaint acknowledges that health effects depended on each individual's circumstances:  "refinery smoke and particulate matter can inflame the respiratory system and cause coughing, eye irritation, headaches, and nausea, *particularly in individuals with asthma or other respiratory or heart conditions*." *Id.* ¶ 27 (emphasis added).  Thus, one individual allegedly experienced a "severe asthma attack in Hawthorne," while "[o]thers experienced headaches, throat

- 20 -

irritation, and fatigue," and still others experienced nothing at all. *Id.* ¶ 28. These allegations lay bare that proving injury would require person-by-person inquiry into each class member's location, duration of exposure, preexisting health vulnerabilities, and symptom manifestation. Such individualized proof is the hallmark of claims that cannot proceed on a classwide basis.

Courts addressing transient environmental emissions claims have repeatedly concluded that such individualized exposure and injury issues overwhelm common questions. In *Malan v. Martinez Ref. Co. LLC*, 2025 WL 2780822, at *2 (N.D. Cal. Sept. 30, 2025), a putative class composed of all residents located within one mile of a gasoline and jet fuel refinery sued for nuisance, negligence, and trespass, claiming the refinery repeatedly emitted toxins and "visible dust." In denying class certification, the court held that "resolving the critical element of injury" in a refinery-emissions case requires "consideration of individualized issues that necessarily would eclipse any common ones," a conclusion equally applicable to Plaintiff's claims here. *Id.* at *8. Critically, *Malan* found that "the nature and scope of the emissions varied across the class area and thus across the thousands of properties owned or rented by members of the proposed class," and that determining whether each class member was harmed required "adjudicating these issues on a parcel-by-parcel basis." *Id.* at *7-8. Plaintiff's allegations regarding the variability of wind patterns after the fire confirm that the same parcel-by-parcel inquiry would be required here. *See Navarro v. ExxonMobil Corp.*, 2022 WL 22248790, at *12 (C.D. Cal. July 5, 2022), *affirmed in relevant part and vacated in part on other grounds by Navarro v. Exxon Mobil Corp.*, 2025 WL 2233315 (9th Cir. Aug. 5, 2025).

As in *Malan*, the class members here—some of whom live close to the refinery, others up to five miles away, and some of whom live downwind, others upwind—will necessarily have "suffered different alleged periods and magnitudes of exposure" and "different alleged symptoms," rendering common answers

- 21 -

Mot. to Dismiss Class Action Compl.
2:25-CV-09699-MWC-BFM

elusive. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006). Here, as there, the "core of the liability inquiry" will turn on each class member's particular property and circumstances, and thus be "an individualized one." *Goldstein v. ExxonMobil Corp.*, 2019 WL 2603967, at *7 (C.D. Cal. Apr. 1, 2019); *see also Lautemann v. Bird Rides, Inc.*, 2019 WL 3037934, at *6 (C.D. Cal. May 31, 2019) (trespass claims "necessarily will turn on questions specific to each class member and his or her property"). In short, Plaintiff has no classwide method to establish injury and causation with common evidence, and the claims would necessarily devolve into individualized inquiries that predominate over any common issues. Because the defect is clear from the Complaint, the Court should exercise its discretion to strike the class allegations now rather than defer to a futile certification exercise that Rule 12(f) is designed to prevent.

## CONCLUSION

For these reasons, Chevron's motion to dismiss and motion to strike should be granted.

Dated:        April 10, 2026                JONES DAY

By: */s/ Christopher Lovrien*

Christopher Lovrien
Attorneys for Defendants
CHEVRON U.S.A. INC. and
CHEVRON CORPORATION