JONES DAY
Christopher Lovrien, Bar No. 230546
Kelsey S. Bryan, Bar No. 307577
cjlovrien@jonesday.com
kbryan@jonesday.com
555 South Flower Street, 50th Floor
Los Angeles, California  90071.2452
Telephone:    +1.213.489.3939

JONES DAY
Nathaniel P. Garrett, Bar No. 248211
ngarrett@jonesday.com
555 California Street, 26th Floor
San Francisco, California  94104
Telephone:    +1.415.626.3939

JONES DAY
Traci L. Lovitt *(Pro hac vice forthcoming)*
tlovitt@jonesday.com
250 Vesey Street
New York, NY 10281.1047
Telephone:    +1.212.326.3939

Attorneys for Defendant
CHEVRON U.S.A. INC. and
CHEVRON CORPORATION

MCGUIREWOODS LLP
Jonathan P. Harmon *(Pro hac vice forthcoming)*
jharmon@mcguirewoods.com
800 East Canal Street
Richmond, VA 2319-3916
Telephone:  +1.804.775.4712

MCGUIREWOODS LLP
Shannon M. Kasley *(Pro hac vice forthcoming)*
skasley@mcguirewoods.com
888 16th Street N.W., Suite 500
Washington, DC 20006
Telephone:  +1.202.857.1700

MCGUIREWOODS LLP
Nicholas J. Hoffman, Bar No. 284472
nhoffman@mcguirewoods.com
1800 Century Park East, 7th Floor
Los Angeles, CA 90067-1501

T:  +1.310.315.8200

**REDACTED VERSION OF DOCUMENT**

**PROPOSED TO BE FILED UNDER SEAL**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL COFFEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEVRON U.S.A. INC.; CHEVRON CORPORATION; and DOES 1-10,<br><br>Defendants**.** | **Case No. 2:25-cv-09699-MWC-BFMx**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF (UNOPPOSED) MOTION FOR RECUSAL**<br><br>**Hearing Date:** June 5, 2026<br>**Time:** 1:30 p.m.<br>**Dept:** 6A<br>**Judge:** Hon. Michelle Williams Court<br><br>Date Action Filed:    October 10, 2025 |

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.    INTRODUCTION ..........................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.....................................3

    A.    This Class Action Against Chevron Is Assigned to Judge Court ..........3

    B.    The Court's Spouse is an Anti-Oil-Industry Political Activist and Lobbyist.................................................................................................3

    C.    Mr. Court Frequently Makes Derogatory and Disparaging Statements About Chevron.....................................................................................4

    D.    Mr. Court Has Been Interviewed in the Media About, and Posted on Social Media About, the Subject Incident in this Litigation ................6

    E.    By Attending Numerous Consumer Watchdog Events, Judge Court Could Reasonably Be Seen as Supporting the Political Activism and Anti-Chevron Views Espoused by Mr. Court....................................7

    F.    Mr. Court Performs Significant Fundraising Based on His Anti-Oil-Industry Messaging .............................................................................8

    G.    Mr. Court Seeks Chevron's Internal Documents to Instigate Criminal Investigations and Civil Claims Against Chevron...............................8

III.  ARGUMENT ...............................................................................................9

    A.    Recusal is Required Because the Court's Impartiality Might Reasonably be Questioned...............................................................9

    B.    Recusal is Required ██████████████████ ████████, and Because Mr. Court Has Other Interests that Could Be Substantially Affected by the Outcome of this Litigation...13

    █ ████████████████████████ ████████.............................................14

    2.    Mr. Court Has a Professional, Political, and Ideological Interest in Making Chevron "Pay" and "Bringing Down" Its Refineries. .......................................................................15

-i-

3.   Mr. Court Has a Financial and Professional Interest In Obtaining Chevron's Internal Documents and Information. ....................... 17

IV.   CONCLUSION ............................................................................................. 19

CERTIFICATE OF COMPLIANCE ...................................................................... 21

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cement Antitrust Litig. (MDL No. 296)*,
688 F.2d 1297 (9th Cir. 1982),
*aff'd sub nom. Arizona v. U.S. Dist. Ct. for Dist. of Arizona*,
459 U.S. 1191 (1983) ...................................................................... 13, 14

*In re Creech*,
119 F.4th 1114 (9th Cir. 2024) ........................................................... 9, 10

*Gordon v. Reliant Energy, Inc.*,
141 F. Supp. 2d 1041 (S.D. Cal. 2001) ............................................... 14, 15

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ............................................................................ 9, 13

*Liteky v. United States*,
510 U.S. 540 (1994) ................................................................................. 9

*Melendres v. Arpaio*,
2009 WL 2132693 (D. Ariz. July 15, 2009) ...................................... 10, 12

*In re Murchison*,
349 U.S. 133 (1955) .................................................................................. 9

*Offutt v. United States*,
348 U.S. 11 (1954) .................................................................................... 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .................................................................... 14

*Perry v. Schwarzenegger*,
630 F.3d 909 (9th Cir. 2011) ............................................................. 16, 17

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. 2022) ................................................... 18

*Potashnick v. Port City Constr. Co.*,
609 F.2d 1101 (5th Cir.1980) .................................................................... 9

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

*Torres v. Mercer Canyons Inc.*,
   835 F3d 1125 (9th Cir. 2016)................................................................................ 14

*Tramonte v. Chrysler Corp.*,
   136 F.3d 1025 (5th Cir. 1998)........................................................................ 14, 15

*United States v. Cooley*,
   1 F.3d 985 (10th Cir. 1993)..................................................................................... 9

*United States v. Holland*,
   519 F.3d 909 (9th Cir. 2008)................................................................................. 10

*United States v. Rechnitz*,
   75 F.4th 131 (2d Cir. 2023).................................................................................. 13

**Statutes**

28 United States Code § 455 ........................................................................ 9, 13, 19

**Other Authorities**

Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3547 (3d ed. 2025)............. 13, 14

Federal Rules of Civil Procedure 72.................................................................... 19

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendants Chevron U.S.A. Inc. and Chevron Corporation (collectively, "Chevron") respectfully request that, under 28 U.S.C. § 455(a) and (b)(4), Judge Court recuse herself from this case. Judge Court's spouse, Mr. Jamie Court, is a vocal critic and avowed opponent of Chevron, and this lawsuit could substantially advance Mr. Court's financial, political, professional, and ideological interests. Recusal is necessary to ensure confidence that any decisions in the matter are not based on such familial interests and to avoid the appearance of impropriety.

On behalf of a putative class, Plaintiff alleges that an October 2, 2025 refinery fire in El Segundo, California, caused personal injuries, property damage, and environmental contamination.[1] This matter and a related matter are assigned to Judge Court. Judge Court is married to Mr. Jamie Court, an anti-oil lobbyist and political activist. Mr. Court helms "Consumer Watchdog," an interest group that aims to "hold oil companies responsible for health and environmental harms." Mr. Court at every opportunity espouses his opinions about the oil industry—including Chevron specifically. He routinely makes derogatory and scandalous statements about Chevron and its executives, including by publicly accusing Chevron of "poisoning" Los Angeles, lying about emissions, and "profiteering," and by reposting accusations that Chevron is "burning our planet" and "fueling" genocide.

Mr. Court's advocacy targets Chevron on issues at the heart of this case. Mr. Court regularly disseminates press releases, opinion pieces, and social media posts arguing that Chevron and other oil companies should "pay" for refinery emissions, environmental contamination, and community-health impacts he attributes to refinery operations. In fact, Mr. Court has spoken directly about the October 2 fire, asserting that refineries are the "most dangerous manufacturing

---

[1] Chevron Corporation denies that it owns or operates the refinery. Rather, it is owned and operated by Chevron U.S.A. Inc.

-1-

facilities we have in our communities" and calling for more oversight of Chevron's refineries.

Recusal is required under § 455(a) because a reasonable, well-informed observer might question the Court's impartiality. Judge Court repeatedly has appeared at Consumer Watchdog's "Rage for Justice" events, where anti-oil speeches and presentations are given. Consumer Watchdog and Mr. Court widely disseminate photographs of Judge Court attending these events across their social media accounts. Judge Court's presence at these events could lead a reasonable observer to conclude that she supports her husband's work and political activism and to question whether she can remain impartial. Judge Court appears in posts on Consumer Watchdog's social media accounts (including Facebook, Instagram, and Flickr) more than 25 times. Even while a federal judge, Judge Court has continued attending Consumer Watchdog's events—both public and private. Under these circumstances, recusal is required to avoid an appearance of impropriety.

In addition, recusal is required under § 455(b)(4). ███████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ Second, Mr. Court has a political, ideological, financial, and professional interest in punishing Chevron and making Chevron "pay" for purported environmental contamination in Los Angeles and elsewhere. Third, Mr. Court has an openly stated interest in obtaining Chevron's internal documents, so that he can advance his anti-oil-industry lobbying and orchestrate criminal and civil claims against Chevron. In fact, Consumer Watchdog has an active lawsuit against Chevron—filed on November 26, 2025—alleging that Chevron has been manipulating its data as part of an illicit scheme to inflate gasoline prices for California consumers, allegations that Chevron of course denies. The Court could substantially affect Mr. Court's interest in obtaining Chevron's internal information, since the Court has ultimate control over which of Chevron's internal

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

documents are produced in discovery and whether they must be filed publicly. These interests all compel recusal.

This request is not made lightly. Chevron appreciates that only rare circumstances warrant recusal. But this, Chevron submits, is one such occasion. For each of these reasons, and based on the evidence presented in the accompanying Declaration of Nicholas J. Hoffman, Chevron respectfully requests that the Court recuse and allow the matter to be reassigned.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     This Class Action Against Chevron Is Assigned to Judge Court

On October 2, 2025, a fire occurred at a refinery owned and operated by Chevron U.S.A. Inc. in El Segundo, California. On October 10, 2025—eight days later—Plaintiff Daniel Coffey filed this putative class action. Dkt. 1. Plaintiff alleges that the fire at the refinery caused personal injuries, property damage, and environmental contamination, and he accuses Chevron of failing to exercise reasonable care in operating the refinery. Dkt. 1, ¶ 40. He seeks monetary compensation, punitive damages, and injunctive relief. *Id.* at ¶ 58, Prayer, §§ B-E.

This case was originally assigned to Judge Dale S. Fischer. Dkt. 2. The case was then reassigned to Judge John A. Kronstadt on October 23, 2025. Dkt. 7. On October 28, 2025, the case was transferred to this Court. Dkt. 8.

Chevron notes that a substantially similar motion for recusal is pending in the related matter of *Tatiana Coleman v. Chevron Corporation*, Case No. No. 2:25-cv-10740-MWC-BFMx. The Court previously reassigned that motion, and the motion for recusal is pending before Judge Sherilyn Peace Garnett. The Court has issued no substantive decisions in this case or in the related *Coleman* matter.

### B.     The Court's Spouse is an Anti-Oil-Industry Political Activist and Lobbyist

The Court's spouse, Mr. Court, is an anti-oil-industry activist who is President and Chairman of the Board of "Consumer Watchdog." Hoffman Decl., ¶ 4.

-3-

Mr. Court is the public face of Consumer Watchdog, and he personally leads its political activism and lobbying against the oil industry. *Id*. at ¶ 6. Under Mr. Court's leadership, Consumer Watchdog has consistently identified "energy reform," including "hold[ing] oil companies responsible for health and environmental harms," as one of its top missions. *Id*. at ¶ 7.

On behalf of Consumer Watchdog, Mr. Court has engaged personally in many lobbying and political campaigns for anti-oil-industry measures in California, including major state bills in 2023 and 2024. *Id*. at ¶ 9. Mr. Court has direct communications with Governor Gavin Newsom, who has acted on anti-oil-industry measures based on Mr. Court's requests. *Id*. at ¶ 10.

### C. Mr. Court Frequently Makes Derogatory and Disparaging Statements About Chevron

Mr. Court widely disseminates his anti-oil-industry and anti-Chevron views across numerous platforms. Hoffman Decl., ¶¶ 11-12. Mr. Court regularly makes derogatory and disparaging statements about Chevron. *Id.* at ¶¶ 11-12. By way of example only:

- In a July 31, 2015 post, Mr. Court mentioned Chevron and publicly declared that he wants to "[b]ring down the refineries." *Id.* at ¶ 12(e), Ex. 18;

- On July 5, 2018, Consumer Watchdog and Mr. Court demanded a "plan to phase out fossil fuel production in California." *Id.* at ¶ 12(g), Ex. 20;

- On July 12, 2018, Consumer Watchdog and Mr. Court encouraged citizens to sign a petition to ban fossil fuels in California. *Id.* at ¶ 12(h), Ex. 21;

- On March 14, 2023, Mr. Court posted on his personal Twitter/X account, singling out Chevron and labeling it "[s]hameful." *Id.* at ¶ 12(m), Ex. 26;

- On March 15, 2023, Consumer Watchdog and Mr. Court claimed that Chevron was engaging in "profiteering." *Id.* at ¶ 12(n), Ex. 27;

- On April 1, 2023, Consumer Watchdog and Mr. Court posted a political campaign to "defend our communities from Big Oil and phase out fossil

-4-

fuels once and for all." *Id.* at ¶ 12(p), Ex. 29;

- On April 2, 2023, Consumer Watchdog and Mr. Court posted a photograph of Mr. Court standing in the state capitol, behind a sign stating "HOLDING BIG OIL ACCOUNTABLE." *Id.* at ¶ 12(9), Ex. 30;[2]

- On May 5, 2023, Consumer Watchdog and Mr. Court posted on Twitter/X claiming that Chevron was a "top 3 polluter" and including hashtags of "#StopBigOil" and "#MakePollutersPay." *Id.* at ¶ 12(u), Ex. 34;

- On January 31, 2024, Mr. Court reposted a Twitter/X post applauding the fact that public activists had "chased the @Chevron CEO out of his fancy dinner" and accused Chevron of "burning our planet" and "fuel[ing]…genocide." *Id.* at ¶ 12(w), Ex. 36;

- On February 1, 2024, Mr. Court reposted another post applauding the fact that activists had chased "Chevron execs" out of their dinner for the second night in a row, while again accusing Chevron of fueling genocide. *Id.* at ¶ 12(x), Ex. 37;

- On February 11, 2024, Consumer Watchdog and Mr. Court posted on Facebook claiming that Chevron was "poisoning communities." *Id.* at ¶ 12(y), Ex. 38;

- On February 24, 2024, Consumer Watchdog and Mr. Court posted a video of Mr. Court claiming that "Chevron made a killing off outrageously high gasoline prices" and hoping to "limit how much refiners like Chevron can make." *Id.* at ¶ 12(z), Ex. 39;

- On February 29, 2024, Consumer Watchdog and Mr. Court posted that "Big Oil is robbing Californians" and that "[g]reedy corporations like Chevron are pocketing 70 cents per gallon," along with hashtags such as "#StopBigOil." *Id.* at ¶ 12(aa), Ex. 40;

- On March 19, 2024, Mr. Court reposted on his personal account that "Big Oil is running a multimillion-dollar campaign to lie" and that "[t]hey're not on your side." *Id.* at ¶ 12(bb), Ex. 41;

- On April 16, 2024, Mr. Court reposted a post stating an intention to "#MakePollutersPay for the illnesses they cause from toxic gas & oil drilling." *Id.* at ¶ 12(dd), Ex. 43;

---

[2] Mr. Court also features a photograph of himself holding a sign stating "HOLDING BIG OIL ACCOUNTABLE" as the primary photograph on the landing page for his personal website [https://jamiecourt.com/]. Hoffman Decl., ¶ 9, Ex.12.

-5-

- On April 9, 2025, apparently in reference to the Palisades Fire in Los Angeles County, Consumer Watchdog and Mr. Court accused oil companies of being responsible for "fossil fuel-driven natural disasters." *Id.* at ¶ 12(ll), Ex. 49;

- On May 30, 2025, Consumer Watchdog and Mr. Court made an Instagram post, accusing Chevron of being involved in a "mafia-style shakedown scheme." *Id.* at ¶ 12(nn), Ex. 53; and

- On October 26, 2025, Consumer Watchdog and Mr. Court accused Chevron of "hos[ing]" consumers. *Id.* at ¶ 12(oo), Ex. 54.

In total, it appears Mr. Court has made thousands of highly negative statements about the oil industry, as well as many dozens of derogatory statements about Chevron specifically. *Id.* at ¶ 12. In doing so, Mr. Court has publicly denigrated Chevron and publicly declared his position on issues at the heart of this case, including by publicly accusing Chevron of "poisoning" Los Angeles and demanding that Chevron should "pay" for refinery emissions, environmental contamination, and community health impacts attributed to refinery operations.

### D. Mr. Court Has Been Interviewed in the Media About, and Posted on Social Media About, the Subject Incident in this Litigation

Consumer Watchdog and Mr. Court have posted about the El Segundo fire at issue in this litigation at least 15 times, across their Instagram, Facebook, and Youtube accounts. Hoffman Decl., ¶ 16. This includes many photographs of the refinery fire with Chevron's logo and alleged gas prices superimposed on top. *See id.* It also includes a YouTube video with Mr. Court stating that consumers would pay more on gasoline as a result of the subject refinery fire. *Id.* at ¶ 16(c).

Mr. Court also has given multiple media interviews about the incident. On October 3, 2025, the day after the fire, Mr. Court was quoted by *Politico* as arguing for more regulation of oil companies to address "lost fuel after a refinery outage." *Id.* at ¶ 17(b) Ex. 75. On October 9, 2025, Mr. Court was quoted by both *U.S. News* and *CalMatters* as arguing for more regulation of oil refineries due to the El Segundo

refinery fire, since, according to Mr. Court, oil refineries are "the most dangerous manufacturing facilities we have in our communities." *Id*. at ¶ 17(c)-(d), Exs. 76-77.

### E. By Attending Numerous Consumer Watchdog Events, Judge Court Could Reasonably Be Seen as Supporting the Political Activism and Anti-Chevron Views Espoused by Mr. Court

Judge Court has not separated herself from Mr. Court's anti-oil-industry political activities. Rather, Judge Court has indicated support for Mr. Court, his viewpoints, and his political activities by repeatedly appearing at Consumer Watchdog events. Hoffman Decl., ¶ 18. Over the past decade, it appears that Judge Court has appeared at nearly every Consumer Watchdog "Rage for Justice" event and sits in the front row. *Id*.

Consumer Watchdog and Mr. Court regularly post photographs of Judge Court attending the Consumer Watchdog events on their social media accounts (including Facebook, Instagram, and Flickr). *Id*. at ¶¶ 18-20, Exs. 78-96. The Consumer Watchdog events attended by Judge Court have included many speeches and presentations about Consumer Watchdog's and Mr. Court's anti-oil-industry political activism and lobbying efforts, as well as derogatory statements about oil refineries and requests for donations to further their mission of seeking regulation of oil companies. *Id*. at ¶ 20.

Since being confirmed to the federal bench in September 2024, Judge Court has continued attending Consumer Watchdog events. On December 15, 2024, Judge Court attended Consumer Watchdog's private holiday dinner for its team members, as evidenced by Consumer Watchdog's public Facebook and Instagram accounts. *Id*. at ¶ 19(a), Exs. 90-91. On June 28, 2025, Judge Court attended Consumer Watchdog's 2025 "Rage for Justice" event, as Consumer Watchdog again posted on its public Flickr account. *Id*. at ¶ 19(b), Exs. 92-93.

The 2025 Consumer Watchdog "Rage for Justice" event attended by Judge Court once again focused heavily on anti-oil-industry presentations, including

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

a speech about lobbying against "Big Oil," "divest[ing] away from oil and fossil fuels," and claiming that oil companies "poison" neighborhoods. *Id.* at ¶ 20(f). Following the event, Judge Court was pictured in a *Daily Journal* article about the event, with the photograph mentioning Judge Court's role as U.S. District Court Judge and thereby connecting Judge Court to Consumer Watchdog's "Rage for Justice" events. *Id.* at ¶ 23, Ex. 97.

It appears Judge Court is currently visible on Consumer Watchdog's social media accounts (including Facebook, Instagram, and Flikr) more than 25 times, strongly connecting Judge Court to Consumer Watchdog and Mr. Court's anti-oil-industry messaging. *Id.* at ¶ 21.

**F.     Mr. Court Performs Significant Fundraising Based on His Anti-Oil-Industry Messaging**

Based on Consumer Watchdog's 990 disclosures, Consumer Watchdog performs significant fundraising in connection with the "Rage for Justice" events that focus heavily on anti-oil-industry messaging and have been repeatedly attended by Judge Court.  Hoffman Decl., ¶ 24.  Consumer Watchdog apparently raised $2 million at the 2025 "Rage for Justice" event alone. *Id.* at ¶ 25.

Consumer Watchdog also has received over $2.7 million in grant money specifically for anti-oil-industry efforts and causes over the past several years. *Id.* at ¶ 29.  Mr. Court has been Consumer Watchdog's highest paid employee/officer throughout all those years—receiving nearly two times more than any other salaried individual from Consumer Watchdog—and repeatedly has received raises in salary as Consumer Watchdog received the fundraising and grant money. *Id.* at ¶ 30.

**G.     Mr. Court Seeks Chevron's Internal Documents to Instigate Criminal Investigations and Civil Claims Against Chevron**

In addition, Mr. Court actively seeks to obtain Chevron's internal documents and information, so that he can further his anti-oil lobbying efforts and try to prompt criminal investigations and civil claims against Chevron.  Hoffman Decl., ¶¶ 32-33,

-8-

Exs. 112-120.  In fact, Consumer Watchdog has an ongoing lawsuit against Chevron now, which Consumer Watchdog filed on November 26, 2025.  *Id*. at ¶ 32(j).

## III.    ARGUMENT

### A.    Recusal is Required Because the Court's Impartiality Might Reasonably be Questioned

"Any justice, judge, or magistrate judge of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The Ninth Circuit has "interpreted this rule to require recusal 'where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'"  *In re Creech*, 119 F.4th 1114, 1121 (9th Cir. 2024) (granting mandamus and holding district court abused its discretion in failing to recuse) (citation omitted).

Impartiality must be "evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988) ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible"); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.  But to perform its high function in the best way 'justice must satisfy the appearance of justice.'") (*quoting Offutt v. United States*, 348 U.S. 11, 14 (1954)); *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) ("In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue.").  This overriding concern with appearances "stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir.1980).

-9-

"Disqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). "Consequently, 'the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue.'" *Id.* (citation omitted).

Further, the Ninth Circuit repeatedly has instructed that "[i]f the case is close, the judge should recuse." *In re Creech*, 119 F.4th at 1121; *Holland*, 519 F.3d at 912 ("If it is a close case, the balance tips in favor of recusal.") (citation omitted). This is particularly true at the district court level. *See Melendres v. Arpaio*, 2009 WL 2132693, at *14-15 (D. Ariz. July 15, 2009) (explaining that "at the district court level," "[w]hen a federal district court judge recuses herself from a case, another judge can easily step into her place," so "all doubts should be resolved in favor of recusal when the issue is close.")

The unique facts and circumstances of this case overwhelmingly would lead a reasonable, well-informed observer to question whether the Court can be impartial. This is *not* a situation where the Court's spouse is merely a member of the general public and holds a certain belief or is a mere member of an advocacy group. Nor is this a situation where the Court's spouse leads a nonprofit that holds a certain, general belief. Rather, the Court's spouse of over 38 years actively and regularly denigrates, and seeks to engage in political activism against, the defendant in this litigation: Chevron. In other words, Mr. Court does not make generic statements about climate change—he makes highly inflammatory statements accusing Chevron of "poisoning" Los Angeles, lying about emissions, and "profiteering," and reposting accusations that Chevron is "burning our planet" and "fueling" genocide. Hoffman Decl., ¶¶ 11, 12(n), (w)-(y), Exs. 27, 36-38. He also expresses a desire to make Chevron "pay" for refinery emissions, environmental contamination, and community health impacts attributed to refinery operations. "Besides being insulting," these statements "speak

-10-

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

directly" to the issues before the Court. *Melendres*, 2009 WL 2132693, at *15.

Further, Mr. Court *personally* leads Consumer Watchdog's self-stated mission to "hold oil companies responsible for health and environmental harms." Hoffman Decl., ¶ 31. He *personally* engages in political activism and lobbying against the oil industry, including by coordinating with the California Governor and Legislature. *Id*. at ¶¶ 9-10, 31. Plus, he has commented in the news media about the very fire at issue in this litigation, including citing it as an example that refineries are the "most dangerous manufacturing facilities we have in our communities." *Id*. at ¶ 17(c)-(d). In short, it would be hard to find anyone less objective about Chevron.

To be clear, Chevron does not immediately attribute Mr. Court's views to Judge Court. The views of one spouse may differ from the other. But the facts here are more than sufficient to raise concerns for a reasonable observer. Time and again, Judge Court has attended the Consumer Watchdog "Rage for Justice" event, where Mr. Court and other attendees give anti-oil industry speeches and presentations. *Id*. at ¶ 23. Despite the clear political nature of the events, and despite the repeated anti-oil messaging, Judge Court continued attending the events, sitting in the front row. *Id*. at ¶ 18. Since taking the federal bench, Judge Court also attended a private Consumer Watchdog team dinner. *Id*. at ¶ 19(a). Even if Judge Court does not share Mr. Court's views, these facts might cause a reasonable observer to question the Court's neutrality.

The association between Mr. Court's political activities and Judge Court is exacerbated by Consumer Watchdog and Mr. Court routinely posting photographs of Judge Court attending the Consumer Watchdog events. *Id*. at ¶¶ 18-23, Exs. 78-97. Consumer Watchdog's social media accounts currently picture Judge Court over 25 times. *Id*. at ¶¶18-21, Exs. 78-93. Just a few months ago, even the news media identified Judge Court, with her title as U.S. District Court Judge, at a Consumer Watchdog "Rage for Justice" event. *Id*. at ¶ 23.

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

Chevron casts no aspersions on Judge Court's desire to support her spouse in his career. But Judge Court's repeated and close association with the anti-Chevron agenda of Consumer Watchdog and Mr. Court compels recusal in this case. *See* Code of Conduct for United States Judges, Canon 2A ("A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen."); *see also* Committee on Codes of Conduct, Advisory Opinion No. 53 ("a judge should, to the extent possible, disassociate himself or herself from the spouse's political involvement"); *see id*. ("A spouse's involvement in political activities . . . may increase the frequency with which a judge is required to recuse.").[3]

Moreover, there is another reason for an observer to reasonably question Judge Court's ability to be impartial in this case. Consumer Watchdog and Mr. Court have demonstrated they will monitor and decry court decisions that favor oil companies and conflict with their anti-oil-industry agenda. They did not hesitate to criticize a Los Angeles Superior Court judge, for example, for holding that a Los Angeles city ordinance banning oil drilling was preempted. *Id*. at ¶ 12(ii). Given this history, the public might reasonably be concerned about Judge Court being influenced by such pressure from a member of her own household.

In sum, recusal is required to preserve public confidence in the integrity of the judicial process. "No Court should tolerate even the slightest chance that its continued participation in a high profile lawsuit could taint the public's perception of the fairness of the outcome." *Melendres*, 2009 WL 2132693, at *15 (recusing

---

[3] There is little doubt the Consumer Watchdog "Rage for Justice" events are political in nature. They feature numerous appearances by progressive politicians, including speeches from individuals such as Rep. Nancy Pelosi, Governor Gavin Newsom, CA Senator Sheila Kuehl, Sen. Bernie Sanders, Rep. John Garamendi, and Sen. Alex Padilla, among many others. The events focus heavily on Consumer Watchdog's political activities, including discussions of its political lobbying on anti-oil-industry efforts. Hoffman Decl., ¶ 22.

-12-
MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

because judge's sister headed a public-interest organization that called one defendant "a relentlessly self-promoting caricature" who is "unrepentant, arrogant, and monumentally disingenuous and who has "less than stellar respect for civil rights and due process" and described the other defendants as "thugs"). Based on the unique facts and circumstances, as well as the overall purpose of § 455(a) "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible," *Liljeberg*, 486 U.S. at 865, recusal should be granted.

**B.    Recusal is Required ███████████████████████, and Because Mr. Court Has Other Interests that Could Be Substantially Affected by the Outcome of this Litigation**

Under § 455(b)(4), a judge "shall also disqualify [her]self" where the judge "knows that [she], individually or as a fiduciary, or [her] spouse … has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). This section establishes two classes of disqualifying interests: (1) financial interests in the subject matter in controversy or in a party to the proceeding; and (2) other interests that could be substantially affected by the outcome of the proceeding. *See In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1308 (9th Cir. 1982), *aff'd sub nom. Arizona v. U.S. Dist. Ct. for Dist. of Arizona*, 459 U.S. 1191 (1983). Such an "'interest' is disqualifying whether it is held by the judge or [her] spouse." *Id*.

The first class—financial interests—requires recusal no matter how small the financial interest. *See* 28 USC § 455(d)(4) ("For the purposes of this section the following words or phrases shall have the meaning indicated: . . ."financial interest" means ownership of a legal or equitable interest, however small . . . ."); *United States v. Rechnitz*, 75 F.4th 131, 145 n.10 (2d Cir. 2023) ("[E]ven minor financial interests run afoul of § 455(b).").

-13-
MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

The second class under § 455(b)(4)—any "other interest"—also covers *non-financial* interests, but it must be one that "could be substantially affected by the outcome of the proceeding." Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3547 (3d ed. 2025). Courts "weigh two factors in deciding whether to recuse under this provision: the remoteness of the interest and its extent or degree." *Id.* Here, recusal is warranted under § 455(b)(4) due to both financial and non-financial interests.

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL



### 2. Mr. Court Has a Professional, Political, and Ideological Interest in Making Chevron "Pay" and "Bringing Down" Its Refineries.

This case also implicates Mr. Court's mission to stop Chevron's operations in California and force Chevron to pay for perceived environmental damages. Mr. Court has a strong political and ideological interest in Chevron's losing this suit. He has spent over a decade attempting to "[b]ring down the [oil] refineries," "hold

-5-

oil drillers accountable for the harms they cause," "rein in #bigoil Greed," "#StopBigOil," and #MakePollutersPay." *See, e.g.,* Hoffman Decl., ¶ 12(e), (h), (j), (p), (r), (u), (y), (aa), and (ee), Exs. 18, 21, 23, 29, 31, 34, 38, 40, 44.  Mr. Court is *specific* about this interest.  He seeks to harm the very defendant in this case—to make Chevron "pay" for what he perceives as wrongs involving Chevron's profits, as well as refinery emissions, environmental contamination, and community health impacts attributed to refinery operations.  *Id*. at ¶¶ 11, 12, 14, 15, 32, Exs. 18, 24, 26, 27, 34-40, 42-44, 53, 54, 112, 114, 117, 118.

His interest is also *personal*.  Mr. Court leads Consumer Watchdog's anti-Chevron political activism, and he frequently criticizes Chevron, both in his official and personal capacity.  *See id.*  His opposition to Chevron is substantially affected by this litigation.  This suit seeks to hold Chevron liable for property damage, physical injuries, and environmental harms from the fire at the El Segundo refinery, and the plaintiffs have sought compensatory damages, injunctive relief, and punitive damages.  Final judgment for the plaintiffs would further Mr. Court's mission, making Chevron "pay" for its alleged wrongs and deterring the company from operating in California.  It also would provide Mr. Court with additional political capital with which to seek new legislation and file additional suits.

This case is thus markedly different from *Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011).  In that single-judge memorandum, Judge Reinhardt declined to recuse himself from an appeal involving a constitutional challenge to California's Proposition 8, which limited marriage to between men and women.  His wife had publicly expressed support for same-sex marriage and served as Executive Director of the ACLU for decades.  But as Judge Reinhardt explained, his wife's opinions "although strongly held," were just that, and the ACLU was "devoted to advocating for numerous social issues, many of which come before the court," including "cases implicating the constitutionality of the death penalty, school prayer, and affirmative action."  *Id.* at 912.  This case is far different.  Mr. Court has

-16-

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

announced a clear objective of making the specific defendant in this case—Chevron—"pay" for its perceived environmental harms and in shutting oil companies out of California. There is no indication that Judge Reinhardt's wife made derogatory statements about the defendants in *Perry*, much less anything similar to Mr. Court's inflammatory statements about Chevron. *See, e.g.,* Hoffman Decl., ¶¶ 11, 12, 14, 15, 32, Exs. 18, 24, 26-27, 34-40, 42-44, 53- 54, 112, 114, 117-118. In fact, Mr. Court has made *dozens* of negative posts about Chevron, repeatedly indicated a desire to punish Chevron (even asking the State of California to open a criminal investigation against Chevron), and orchestrated civil claims against Chevron, as recently as November 2025. *See id.* at ¶ 32, Exs. 112, 116, 118, 120. Mr. Court's interests go "over and beyond the interest of any American with a strong view concerning" these issues. *Perry*, 630 F.3d at 915.

To be clear, Chevron is not arguing Judge Court must recuse herself in every case that touches on topics for which Consumer Watchdog has expressed a view. Rather, Judge Court should recuse herself because Mr. Court has stated a specific interest, in inflammatory terms, to harm this specific defendant, and to make it "pay" for perceived wrongs that are implicated in this litigation. Mr. Court's actions indicate *not* an opinion about an abstract societal issue, but rather a vendetta to try to punish a specific defendant—which is now before his spouse.

There is little doubt that this proceeding could "substantially affect" Mr. Court's interest in requiring Chevron to "pay" for environmental harms and to limit its operations in California. Recusal is thus warranted.

### 3.	Mr. Court Has a Financial and Professional Interest In Obtaining Chevron's Internal Documents and Information.

Mr. Court has another implicated interest: his self-stated interest in obtaining *confidential* information from California's oil refiners, including Chevron, so he can use the information to further his anti-oil-industry lobbying and political activism, and so that he can try to orchestrate criminal and civil claims against oil refiners.

-17-

Examples abound of Mr. Court admitting that he seeks confidential information from oil companies. *See, e.g.,* Hoffman Decl., ¶ 32, Exs. 112-119. In the case of *Persian Gulf, Inc. v. BP West Coast Products, LLC, et al.*, for example, Mr. Court submitted a sworn declaration—in response to a subpoena from Chevron—stating that "[o]ne of Consumer Watchdog's chief missions is to monitor California's gas, electric, and oil companies . . . to protect ratepayers, consumers, and the environment," and then went on for several pages explaining how important it is for him to be permitted to seek Chevron's confidential information to support his mission. *See id.* at ¶ 32(f), Ex. 116, ¶¶ 3, 5, 9-16.[5] Around the same time, Mr. Court boasted on his personal Twitter/X account that he was "[p]roud to stand up to Big Oil's subpoenas" to protect his confidential sources that gave him internal information about Chevron. *See* Hoffman Decl., ¶ 32(d), Ex. 115. In the end, Chevron was forced to expend significant funds to defend against the manufactured allegations in the *Persian Gulf* case before winning summary judgment. *See Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1175 (S.D. Cal. 2022).

Nor was that a one-time aberration. As recently as November 26, 2025, Consumer Watchdog filed a lawsuit against Chevron—apparently based on purported internal information—alleging that Chevron has been manipulating its data and failing to disclose certain information. *Id.* at ¶ 32(j), Ex. 120. As Mr. Court has admitted under oath, as the President and Chairman of the Board, he has the authority to recommend Consumer Watchdog's litigation. *Id.* at ¶ 32(f), Ex. 116, ¶ 19. In other words, Mr. Court actively seeks Chevron's internal information only to turn around and orchestrate criminal or civil claims against Chevron—all to further his own anti-oil-industry and anti-Chevron mission.

For good measure, Mr. Court even has admitted that he seeks oil companies' confidential information so he can interfere with their contractual relationships with

---

[5] Mr. Court also admits that he advances his own career using internal oil-industry information. *Id.* at Ex. 116, ¶ 3, 5, 6.

-18-

other companies: "'If we knew which companies were underwriting a refinery or a gas storage site, then we would have the ability to target them and get them not to do it." *Id*. at ¶ 32(g), Ex. 117.

In short, Mr. Court repeatedly has admitted that he has an interest in obtaining Chevron's internal documents. This interest is *not* remote—it is a direct interest articulated by Mr. Court personally. According to Mr. Court, it is also a *significant* interest, critical to advancing one of Consumer Watchdog's "chief" missions.

This interest is for all intents and purposes a *financial* interest. Mr. Court performs fundraising—to the tune of many millions of dollars—based on his anti-oil-industry advocacy, which, in turn, is founded on the internal oil industry information he obtains. *See* Hoffman Decl., ¶¶ 24-29, Exs. 2-11, 97-111. As noted, any financial interest—however small—requires recusal. *See* 28 USC § 455(b)(4); *see also id*. at § 455(d)(4) (requiring recusal for financial interest, "however small").

Regardless, it is also a *non-financial* interest that could be "substantially affected" in this litigation. *See* 28 USC § 455(b)(4). This Court will determine what confidential information Chevron is required to produce in discovery and which materials must be filed publicly versus under seal. *See* Fed. R. Civ. P. 72(a) (explaining that the district judge "must consider" any objections to magistrate judge's orders). Accordingly, Judge Court would have the power to implement Mr. Court's desire and force Chevron to disclose its internal documents—thereby furthering Mr. Court's efforts to harm Chevron and advancing his career, all at the same time. In sum, the requirements for automatic recusal are satisfied here; Mr. Court has a financial, professional, political, and ideological interest in this proceeding against Chevron.

## IV.   CONCLUSION

For these reasons, Chevron respectfully submits that Judge Court should recuse herself from this case.

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

Dated:        May 1, 2026                    Respectfully submitted,


By: */s/ Nicholas J. Hoffman*
Nicholas J. Hoffman
MCGUIREWOODS LLP

Christopher Lovrien
Nathaniel P. Garrett
Kelsey S. Bryan
JONES DAY

*Attorneys for Defendant*
*CHEVRON U.S.A. INC. AND*
*CHEVRON CORPORATION*

-20-

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2, the undersigned, counsel of record for Defendant Chevron Corporation, certifies that this memorandum of points and authorities contains 6,331 words and is less than 25 pages, which:

   X   complies with the word limit of L.R. 11-6.1; and

   X   complies with the page limit set by court order, specifically the Court's November 4, 2025 Standing Order which states: "Memoranda of points and authorities in support of or in opposition to motions shall not exceed 25 pages" and "[r]eplies shall not exceed 12 pages."  Dkt. 9.

Dated:      May 1, 2026          Respectfully submitted,

By: */s/ Nicholas J. Hoffman*
      Nicholas J. Hoffman

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL

## CERTIFICATE OF SERVICE

I hereby certify that on **May 1, 2026**, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **May 1, 2026**, at Los Angeles, California.

*/s/ Nicholas J. Hoffman*
Nicholas J. Hoffman

MEMORANDUM IN SUPPORT OF
(UNOPPOSED) MOTION FOR RECUSAL